## CENTRAL RAILROAD & BANKING CO. OF GEORGIA v. FARMERS' LOAN & TRUST CO. OF NEW YORK et al.

### (Circuit Court, S. D. Georgia, E. D.  April 24, 1893.)

**RAILROAD COMPANIES — APPOINTMENT OF RECEIVER — RIGHTS OF SUBSIDIARY COMPANY.**

H. was appointed receiver of the C. R. Co., in acordance with the prayer of a bill by that company alleging that it operated and controlled several lines of railway, among others the P. R. Co., was unable to pay the interest on its bonds, and that a receiver was necessary in order to prevent dismemberment and disastrous litigation. Thereafter A. filed a petition in the cause showing his appointment as receiver of the P. R. Co. by a state court after the appointment of H. as receiver of the C. R. Co., and praying that H. be directed to surrender the road to petitioner. *Held,* the C. R. Co., being merely a creditor of the P. R. Co., and a majority stockholder therein, but having no rights of ownership in the property of the road, had no right to its possession and control, and, as the receiver of the C. R. Co. had no greater rights, that the prayer of the petition must be granted.

In Equity. Bill by the Central Railroad & Banking Company of Georgia against the Farmers' Loan & Trust Company of New York and others. John H. Averil, receiver of the Port Royal & Augusta Railway Company, filed a petition in the suit praying that a receiver of plaintiff company, having control of the Port Royal & Augusta Railway Company as a part of plaintiff company's system, be compelled to surrender such road to petitioner. Prayer of petitioner granted.

For other proceedings in this case see 50 Fed. Rep. 338; 54 Fed. Rep. 556.

Smythe & Lee and A. C. King, for Averil.
Lawton & Cunningham and J. Ganahl, for respondents.

PARDEE, Circuit Judge. On July 4, 1892, the Central Railroad & Banking Company of Georgia, a corporation existing under and by virtue of the laws of the state of Georgia, filed a bill in this court against the Farmers' Loan & Trust Company and others. The first paragraph of said bill is as follows:

"That heretofore, to wit, on March 3, 1892, Mrs. Rowena M. Clarke, a stockholder of said Central Railroad & Banking Company of Georgia, exhibited and filed in said court her bill of complaint against said company, and also against the Richmond & Danville Railroad Company and the Richmond and West Point Terminal Railway & Warehouse Company and the Georgia Pacific Railway Company, which said bill of complaint

assailed the validity of the lease under which said Danville Company had been operating said Central Railroad since June 1, 1891, and also assailed the legality of the control which said terminal company had exercised over said Central Railroad Company for about four years previously, by reason of the former's ownership and use of a block of 42,000 shares, which constituted a majority of the stock of the latter company. Said bill of complaint prayed for the cancellation of said lease, for an injunction against the use of said stock by or in behalf of said terminal company, for the appointment of a receiver to take charge of and to operate said Central Railroad Company, and for other relief. Upon the filing of said bill this court constituted the then president of said company temporary receiver of said Central Railroad Company, and granted a rule requiring the defendants to show cause, at the time stated therein, why the injunction should not be granted, and receiver appointed, as prayed for. In response to said rule said Danville Company appeared and repudiated said lease, and surrendered said Central Railroad Company to the possession of the court, whereas the Central Railroad Company appeared and, affirming the validity of said lease, opposed said application for injunction and receiver. After a hearing duly had, this court granted an order whereby, among other things, it was decreed that E. P. Alexander, Joseph Hull, E. P. Howell, Jas. Swann, J. K. Garnett, A. Vetsburg, Chas. H. Phinizy, H. T. Inman, George J. Mills, Henry R. Jackson, and U. B. Harrold be appointed receivers of the railroad, property, and assets of the said Central Railroad & Banking Company of Georgia, and said receivers were directed to take charge of the same, and to operate said railroad, with the usual powers granted to receivers of railroads; and said receivers were further directed to take possession of and operate all the property and assets of the Ocean Steamship Company of Savannah, the New England & Savannah Steamship Company, the Savannah & Western Railroad Company, the Montgomery & Eufaula Railway Company, as part of the assets and system of said Central Railroad & Banking Company. Subsequently S. R. Jaques and H. M. Comer were added to the board of receivers, the last-named being made chairman of the board and president of the company; all of said receivers being directors of said company. In pursuance of said order said receivers did take charge of said Central Railroad & Banking Company, and all of its auxiliary lines, and all of its other property and assets, including said Ocean Steamship Company and said New England & Savannah Steamship Company and said Savannah & Western Railroad Company and said Montgomery & Eufaula Railway Company, and said receivers are now, and have ever since been, in the possession, control, and management of said corporation and properties. And your orator attaches hereto a copy of said order, marked 'Exhibit A,' and prays full liberty of reference, not only to said order, but to the entire record of said cause, which is all of file in this court, and a copy of which, on account of its voluminousness, and for other reasons, it would be impracticable to append herewith."

The second paragraph describes the main line and branches of the Central Railroad owned absolutely by the Central Railroad & Banking Company of Georgia, and also the lines of railroad controlled by said company by ownership of the entire or a major part of the capital stock of the corporations respectively owning the lines, and also the lines of railroads controlled by the Central Railroad & Banking Company under lease, and enumerates the stocks and bonds of the various corporations owned by the Central Railroad & Banking Company of Georgia, in which enumeration is included stock of the Port Royal & Augusta Railway Company, $401,500, and income bonds, Port Royal & Augusta Railway Company, $1,172,000.

The third paragraph of the bill sets forth at large and in detail the liabilities of the Central Railroad & Banking Company of

Georgia, in which is included $112,000 of the second mortgage bonds of the Port Royal & Augusta Railway Company, due July 1, 1898, bearing 6 per cent. interest per annum, payable semiannually, these bonds being secured by a sinking fund of $6,000 per annum, payable to said Central Railroad & Banking Company of Georgia by said Port Royal & Augusta Railway Company.

The fourth paragraph of the bill gives a history of the Central Railroad & Banking Company of Georgia, tending to account for its alleged embarrassed financial condition, continuing as follows:

"The Central Railroad Company is now in an embarrassed financial condition, and was compelled, on July 1st, to default upon the semiannual payments of interest to the tripartite bonds and certificates of indebtedness hereinbefore described. This default will, of course, impair confidence in the company, will render probable the institution of suits against it in the several states where its lines are operated, and will expose it to the danger of having its rolling stock, materials, and other property levied on under attachments or executions, which would seriously embarrass its operation, and lead to the most disastrous consequences. The Central Railroad & Banking Company operates about two thousand miles of railroads, and also the steamship lines hereinbefore mentioned. Its railroad lines are situated in Georgia, Alabama, South Carolina, Tennessee, and through and over its system is transacted a large part of the transportation business of the country served by it. A large part of the value of its properties lies in the unity and integrity of its system, and to dismember or disintegrate the system would be to destroy a very large proportion of the value of the properties which compose and constitute it. The disintegration or dismemberment, therefore, of its system, or the separation of the several parts or lines which go to make it up, would not only be disastrous to the stockholders and security holders and creditors of the Central Railroad & Banking Company, but would likewise be injurious to the several companies which it controls and operates. While this company is now insolvent, in the sense that it is unable to meet its maturing obligations, your orator verily believes that if the integrity of its system is maintained, and its properties and interests conserved, until a proper plan of reorganization can be perfected, it can be re-established upon a sound basis, and restored to prosperous conditions. To accomplish this, however, the immediate interposition of a court of chancery is absolutely necessary, for the purpose of protecting the integrity of the system and of saving it from disintegration, and of preventing the serious and irreparable losses that this disruption would entail upon the stockholders, creditors, and other persons who are in any wise interested in the property. If, in view of the default which has occurred, individual creditors who reside in different sections of the country assert their remedies in different courts in the several states, and cause the rolling stock, supplies, or other property of the company to be attached or levied upon, not only will the earnings of the company be greatly diminished, if its operation, indeed, is not entirely stopped, but the public, generally, will be deprived of the service of this company as a public carrier. The continued default, too, of the interest on said bonds will produce the immediate maturity of the principal thereof, a great multiplicity of suits will result, and this valuable trust property will be dismembered, unless its value is preserved as a single trust property for the benefit of all who are interested in it, by adequate judicial protection, until such time as a satisfactory financial reorganization can be consummated. Hence it is that your orator, conceiving that it is its duty to preserve the value of its company as a going concern, and the value which results from the unity of its system, and to treat all of its properties and values as constituting a trust fund for the benefit, first, of its creditors, and then of its stockholders, has determined to invoke the protection of this court, which now has this property in charge, for the benefit of all persons having any interest therein, in order that this great railroad system may not be destroyed, and its assets scattered and dissipated, by multitudinous, expensive, and disastrous litigation."

The fifth paragraph is as follows:

"Your orator further showeth that while said Central Railroad & Banking Company is now in the charge and under the administration of receivers heretofore appointed by this court, who are also directors of the corporation, it is thought by your orator and by many of its largest creditors that, in view of the conditions which now exist, the property can be better managed, and that the rehabilitation and reorganization of the company will be greatly aided, by the appointment of a receiver for said Central Railroad & Banking Company and its auxiliary and controlled corporations, who shall administer the same under the order and direction of this court under this bill."

The relief prayed in the bill is: (1) That a receiver be appointed under this bill to take charge of and operate the Central Railroad & Banking Company of Georgia and its auxiliary and controlled corporations and properties, i. e. the Ocean Steamship Company of Savannah, the New England & Savannah Steamship Company, the Montgomery & Eufaula Railway Company, the Savannah & Western Railroad Company, the Savannah & Atlantic Railway Company, the Port Royal & Augusta Railway Company, and the Port Royal & Western Carolina Railway Company,—all of these companies being controlled, and wholly or largely in part owned, by complainant; and also the Southwestern Railroad, the Augusta & Savannah Railroad, and the Eatonton Branch Railroad,—these three last-named railroads being operated by complainant under leases; and also the one-half interest in the Macon & Northern Railroad, and a one-half interest in the lease of the Georgia Railroad; and also all the other railroads, properties, and assets of said Central Railroad & Banking Company of Georgia, of every character and description whatsoever. (2) Directions to the receiver as to the operating expenses of the property, and as to the application of surplus income. (3) That the court do fully administer the trust fund in which the stockholders and creditors of complainant are interested, marshal its assets, ascertain the several liens and priorities existing upon it, and the amount due upon each and every part of said mortgages or other liens, and enforce and decree upon the rights, liens, and equities of all parties as the same may be finally ascertained and adjudicated by the court. (4) That subpoenas may issue to the various corporations named in the bill, including the Port Royal & Augusta Railway Company and the Port Royal & Western Carolina Railway Company; these two said to be corporations under the laws of Georgia and South Carolina, with their principal offices at Augusta, Ga. (5) For such other and further orders and decrees as may from time to time seem necessary and proper to fully conserve, protect, and enforce the rights of all persons who, as stockholders, creditors, or otherwise, are interested in any way in said Central Railroad & Banking Company of Georgia; and for general relief.

The bill is verified by H. M. Comer, president of the Central Railroad & Banking Company of Georgia.

To this bill several answers have been filed; among others, the separate answer of the Port Royal & Augusta Railway Company, as follows:

"That it admits the said complainant is the owner of the capital stock and bonds of this defendant, as it avers in said bill, and that it operates said railroad of this defendant as a part of its system, accounting for its earnings to its stockholders, and providing for its obligations as the same mature. That the operation of the said railroad in connection with the said system of the Central Railroad & Banking Company of Georgia is carried on by the general officers of said company at a great saving to this defendant, and it is to the advantage of this company that the integrity of the system of the Central Railroad be maintained. The disintegration of said system would entail much loss on this defendant, and would render it almost impossible for it to maintain its corporate existence. And this defendant prays that this may be taken as an answer, and expresses its desire that the appointment of H. M. Comer as receiver, in accordance with the prayer of said bill, be made permanent."

This answer is attested by the signature of H. M. Comer, president, attested by the seal of the company, and the signature of the secretary. On July 4, 1892, the bill being presented to one of the judges of the circuit court, a temporary order was entered granting the prayer of the bill, so far as to appoint H. M. Comer receiver of the Central Railroad & Banking Company of Georgia and its alleged dependent corporations, including the Port Royal & Augusta Railway Company, and directing the defendant to show cause, on the 14th day of July following, why the receivership thus created should not be made permanent. On the 14th day of July, the cause came on to be heard under the order and rule granted on July 4th, and on July 15th the court entered an order constituting H. M. Comer permanent receiver of the Central Railroad & Banking Company of Georgia, and of the auxiliary and dependent corporations which, by ownership of stock or otherwise, it owns or controls, including therein, among other railroads, the Port Royal & Augusta Railway Company, and enjoining all the corporations named in the bill of complaint, and all other persons, from interfering with the possession, use, control, or operation and management of the property therein mentioned.

March 31, 1893, John H. Averil presented his petition showing to the court that on the 28th day of January, 1893, he was appointed receiver of the railroad and assets of the Port Royal & Augusta Railway Company by the superior court of the Augusta circuit in the state of Georgia, in the cause depending in the superior court of the county of Richmond, in said state of Georgia, of Henry B. King et al., Stockholders of the Port Royal & Augusta Railway Company, v. the Port Royal & Augusta Railway Company and the Central Railroad & Banking Company of Georgia; that the said superior court of the county of Richmond is a court of general jurisdiction of the state of Georgia, and as such has full jurisdiction of the subject-matter of said suit, and of the persons of defendants therein; that, at the time the order was entered appointing petitioner receiver, an additional order was entered directing petitioner, as such receiver, to file his petition in this court, praying this court to direct H. M. Comer, claiming to be in possession of said Port Royal & Augusta Railway Company as receiver appointed by this court in the case of The Central Railroad & Banking Company of Georgia v. The Farmers' Loan & Trust Company

of New York, to surrender the said railroad and property so in his hands to petitioner. The petitioner then recites more or less of the proceedings had in this court in the case of Rowena Clarke v. The Central Railroad & Banking Company of Georgia, and in the case of The Central Railroad & Banking Company of Georgia v. The Farmers' Loan & Trust Company et al.; and thereupon suggests that this court, in the cause named, is without jurisdiction to entertain the same as against the Port Royal & Augusta Railway Company, because it is a suit between citizens of the same state; and, further, that in the bill of The Central Railroad & Banking Company of Georgia v. The Farmers' Loan & Trust Company et al., no cause of action, legal or equitable, is stated as against the Port Royal & Augusta Railway Company of which this court can have or entertain jurisdiction, or upon which, according to the orderly course of proceedings in this court, a receiver should be appointed. Petitioner concludes:

"There is no allegation whatsoever that the said Port Royal & Augusta Railway Company is insolvent. On the contrary, your petitioner alleges that it is not insolvent, as appears by the last annual statement of the company for the fiscal year ending June 30, 1892, submitted by Mr. H. M. Comer, as president, to the stockholders of the said railway company at their last annual meeting, a copy of which is hereto annexed as 'Exhibit C.' And your petitioner as such receiver, and appearing only for the purpose of calling the attention of this honorable court to the proceedings had in this petition, and respectfully calling attention to the alleged want of jurisdiction of the said United States circuit court for the southern district of Georgia, eastern division, to entertain said bill in this order recited, or to appoint the said H. M. Comer receiver thereunder, and to request and secure from said honorable court the withdrawal of said H. M. Comer as receiver over said property, and the surrender of said railroad and property of said Port Royal & Augusta Railway Company to the receiver of this court, in obedience to his honor's, Judge Roney's, order, as aforesaid, respectfully craves leave to present this, his petition, to this honorable court, and does herein set forth the facts aforesaid, and respectfully calls the attention of this court to the want of jurisdiction and equity in the proceedings under which the appointment of the said H. M. Comer, receiver as aforesaid, was made. And your petitioner would further pray that this petition may be ordered filed in this cause, and that the said H. M. Comer, and the said parties herein, may be required to show cause unto your honors why the aforesaid order appointing him, the said H. M. Comer, as receiver of said Port Royal & Augusta Railway Company, its property and assets, should not be as to it and them, by your honorable court, rescinded and be made of none effect, and why your petitioner, as the lawful receiver of the said Port Royal & Augusta Railway Company, should not obtain and retain possession of all and singular its property, effects, and franchises."

The bill filed in the superior court of Richmond county, Ga., (attached as an exhibit to the petition of Averil,) shows that the petitioners are stockholders in the Port Royal & Augusta Railway Company; gives a history of the Port Royal & Augusta Railway Company; the acquisition of a majority of its stock by the Central Railroad & Banking Company of Georgia; its domination and control by the Central Railroad & Banking Company of Georgia; alleges that the Port Royal & Augusta Railway is a competing line with other lines of the Central Railroad & Banking Company of Georgia; that the domination of the Central Railroad & Banking Company of Georgia is illegal, and its management bad; that, under

CENTRAL RAILROAD & BANKING CO. *v.* FARMERS' LOAN & TRUST CO.   363

resolutions passed by the legislature of the state of South Carolina, the attorney general of the state of South Carolina has instituted a civil proceeding authorized by the laws of said state against the Port Royal & Augusta Railway Company, seeking, among other things, to forfeit the charter and franchises of the company; and avers that the suit will proceed to forfeiture in the event that the illegal control of the Central Railroad & Banking Company of Georgia, and the abuse and misuse of the franchises of the said Port Royal & Augusta Railway Company, are not forever ended; and the bill concludes with suitable prayer for relief.

Upon this bill the superior court of Richmond county appointed the petitioner, John H. Averil, receiver of the Port Royal & Augusta Railway Company, its railroad, property, and assets, with the usual powers granted to receivers, but directing said receivers to file proper proceedings before this court, calling the attention of this court to the proceedings had in the superior court of Richmond county, and respectfully calling attention to the alleged want of jurisdiction of the United States circuit court for the southern district of Georgia to entertain the bill in The Central Railroad & Banking Company of Georgia v. The Farmers' Loan & Trust Company et al., and to request and secure from this court the withdrawal of H. M. Comer as receiver of the property of the Port Royal & Augusta Railway Company, and the surrender of said property to the receiver appointed by the state court. Leave having been granted to file the Averil petition, and rule to show cause having been entered, H. M. Comer, receiver, files a somewhat lengthy answer, the pertinent part of which is as follows:

"This respondent, further answering, says that the said Port Royal & Augusta Railway Company has, since the year 1881, formed a part and parcel of the system known as the system of the Central Railroad & Banking Company of Georgia, and has been operated since that time, and up to the present time, as a part of said system; that, since said year 1881, the presidents of the Central Railroad & Banking Company of Georgia have been successively the presidents of the Port Royal & Augusta Railway Company, and for the purpose of economy, and for the benefit of all parties, the business of said Port Royal & Augusta Railway Company has been transacted by the officers of the Central Railroad & Banking Company of Georgia, who were the officers of the said Port Royal & Augusta Railway Company as well as officers of the Central Railroad & Banking Company. And respondent says that such conduct and operation by the officers of the Central Railroad & Banking Company of Georgia as officers of the Port Royal & Augusta Railway Company has resulted entirely in the greater economical management of both roads, and has contributed thereby to the greater net earnings of both corporations, and to the ability of both corporations to give easier and cheaper rates to the public. And this respondent, further answering, says that the Port Royal & Augusta Railway Company, having been operated as a part of the system of the Central Railroad & Banking Company of Georgia, has been largely operated with the equipment which belongs to the Central Railroad & Banking Company of Georgia, and which is now in the hands of this respondent as receiver of said railroad; that if said Port Royal & Augusta Railway was put in the hands of a separate receiver, or if it was divorced from its connection with the said Central Railroad system, it would be in a condition in which it could not be operated unless large purchases of rolling stock were made for its use; that said rolling stock could not be purchased without putting additional burdens upon said company, which this respondent suggests would be very improvident, and would render the bonds and stock of said company of less value than they now are. This

respondent says that it is not true, as stated in the said petition, that the bill under which this respondent was appointed by this honorable court the receiver did not state any grounds, legal or equitable, for such appointment, or that this court was without jurisdiction to entertain the said bill, or to make the said appointment; but, on the contrary, this respondent says that this court had jurisdiction to make the said appointments, that the said bill did make out a case for the appointment of this respondent as the said receiver, and that the said appointment was lawful, right, and proper. And, in conclusion, this respondent particularly insists that it would be disastrous to the Port Royal & Augusta Railway Company to turn it over to the petitioner, another receiver, and to sever its connection with the Central Railroad & Banking Company of Georgia; that such severance would involve a large outlay at once, as hereinbefore shown, for equipment, and for expenses incident to a separate receivership, for which the Port Royal & Augusta Railway Company has no means; and this would be seriously prejudicial to the said Port Royal & Augusta Railway Company, its creditors and stockholders. The said railway company is now heavily bonded, could not afford this additional expense, and can be operated much more successfully and economically by this respondent, who is its president; and respondent respectfully insists that no reason is set forth in the petition to this court, or in the petition to the judge of the superior court of Richmond county, why the said Port Royal & Augusta Railway Company should be placed in the hands of another receiver."

The argument on the application under consideration has taken a wide range. The lack of jurisdiction of the superior court of Richmond county, Ga., to appoint a receiver of the Port Royal & Augusta Railway Company on the facts and in the present state of the litigation in that court is suggested, and the proceedings criticised, and it is particularly urged that no permanent receiver has been, or can be, appointed by that court. These questions do not require my consideration. The record shows that the state court has appointed petitioner, Averil, receiver of the Port Royal & Augusta Railway Company, its property and assets, and has, in a spirit of comity, sent him to this court (which by its receivership is in possession of the same) to assert whatever rights he may have by reason of his appointment as receiver to the property in question. The state court is the judge of its own jurisdiction, and I assume, for the purpose of this application, that it is fully seised of all the jurisdiction it has exercised. The courts of the United States are courts of limited jurisdiction as to parties and controversies, and of their own motion will notice a want of jurisdiction in any case where it is in any wise apparent on the face of the record. It is not necessary, therefore, to particularly inquire whether the petitioner, Averil, suggesting a want of jurisdiction in this court and requesting the release of the property, has pursued a strictly correct and proper way for the petitioner or the Port Royal & Augusta Railway Company to raise the question and secure a decision. A defect of jurisdiction being suggested, the court necessarily notices it.

It cannot be seriously contended that, under the bill of Rowena Clarke v. The Central Railroad & Banking Company of Georgia, this court has any jurisdiction or control over the Port Royal & Augusta Railway Company, because the Port Royal & Augusta Railway Company was neither a party to that bill nor were its possession or property affected thereby, or by any orders entered therein. The claim presented here by Averil is the right

of the Port Royal & Augusta Railway Company to the control and possession of its own railway, as against the right of this court to possession of the railway and its properties under the bill of The Central Railroad & Banking Company of Georgia v. The Farmers' Loan & Trust Company et al. The bill does not appear to be in any wise ancillary to, or dependent on, the Rowena Clark bill, in so far, at least, as the Port Royal & Augusta Railway Company is concerned.

Assuming, however, for this hearing, that this court is fully seised of jurisdiction under the said bill of all the property of the Central Railroad & Banking Company of Georgia for the purposes alleged and the relief prayed for, it does not follow that, under the facts shown by the record, the court has any jurisdiction over the Port Royal & Augusta Railway Company. The citizenship of the two corporations, even if there was a controversy between them, is such—both being Georgia corporations—as not to confer, but rather to forbid, jurisdiction. The Central Railroad & Banking Company asserts no ownership over, nor estate in, the Port Royal & Augusta Railway Company, nor in its property, nor any controversy with it as to ownership or lien. It asserts the ownership of stock in, and that it is a creditor of, that corporation, and that it has, for many years, as creditor and stockholder, controlled the same. The Port Royal & Augusta Railway Company is a distinct corporation, fully organized, with all of its rights as such in full force, and the Central Railroad & Banking Company has no right to its possession and control, save through the legitimate influence it may exert as a majority stockholder. The possession and control of this court by its receiver under the bill referred to cannot be greater than the right of the Central Railroad & Banking Company.

I have noticed the showing made on behalf of the Central Railroad & Banking Company as to the great advantages derived by the Port Royal & Augusta Railway Company from the past and present management, and as to the injuries which will result from taking the said railway out of the Central system, as well as the showing presented by the bill filed in the state court of the injurious effects and general disaster which results to the Port Royal & Augusta Railway Company by reason of the domination and control of the Central Railroad & Banking Company of Georgia, and am of the opinion that there is great exaggeration on both sides in the matter. A determination, however, of the issue would not aid the court in reaching a proper conclusion in the present matter. In my opinion, an order should be entered in the case of The Central Railroad & Banking Company of Georgia v. The Farmers' Loan & Trust Company et al., releasing and discharging the Port Royal & Augusta Railway Company, its properties and assets, from the possession of the court and the custody of the receiver.